Our last case for argument this morning is Weissman v. Clark. Weissman v. Clark Good morning, Your Honors. May it please the Court, I'm Mark Silversmith. For Appellant Weissman, I'd like to reserve five minutes for rebuttal. I know there are seven issues that were certified by the District Court. I'd like to focus on four of those issues, the Napui claim, the juror contact, the not-heterosexual argument, and time remaining, the enhancement issue. Alone or together, these errors represent a stream malfunction in the straight criminal justice system, which habeas is designed to address. For the Napui error, the State Court clearly erred in finding no prejudice on this claim. Both the State and the State Court said that our erection testimony was important evidence, was strong evidence that Appellant acted with sexual intent, albeit tainted. Those findings should be presumed correct. The false testimony did not just affect whether the hugs and the back rubs had sexual intent. They also affected credibility, as the Attorney General now concedes. Would a juror believe K.C., T.B., and J.K. when they said Appellant acted sexually with  I guess I'm struggling with that argument because if we have multiple victims involved in this case, and my recollection from the record is that none of the accounts that the California Court of Appeals allowed to remain involved the witness who testified falsely. Is that correct? That's correct. So then how does that witness who made a false statement in his testimony undermine the credibility of all the other witnesses and victims? If I may, Your Honor, both, as the Attorney General concedes, both the prosecutor and the Attorney General and the State Court said it was important evidence that was used to bolster the credibility of the other witnesses. If you look in page 24 and 25 of the Respondent's Brief, the Attorney General concedes the jury was invited to use, and likely did use, the testimony to lend credibility to the other's accounts. And they concede that the DA's argument was that this is a pattern of misconduct and that the similarity between acts renders each accuser more credible. Now if these accusers had some corroboration to them, perhaps it would be a different story. But these accusers were uncorroborated, and not only that, the State Court made factual findings that both had substantial impeachment. The State Court said TB was substantially impeached with his history of lying admitted, his hallucinations. He made false accusations of molestation against his mom, and he said he was not molested by the appellant. And the State Court also said, as a factual matter, that the trial counsel mounted a strong attack on KC's credibility. Of course, he never remembered anything happening until he took LSD, two hits, and drank half a bottle of whiskey. And he accused someone who was his neighbor, unlike appellant, and he accused someone named Bill, unlike appellant. It just strikes me as a hard sell to say that where the jury was faced with all of that other impeachment evidence, which I grant some of it is quite compelling, that this false testimony that isn't even about whether an act did or didn't occur, but rather is about whether an act was reported to a DA before trial or not, is going to undermine the credibility of every witness in this case. Well, the State Court made findings that these witnesses had credibility problems, and the State Court made, and the Attorney General concedes that the DA urged, the DA kept saying, lightning doesn't strike twice, it doesn't strike all these times. Now because of the R testimony and the other witnesses, that's a pattern, and that's why you should find that KC, and TB, and JK are credible, because it doesn't make sense to have all these accusations. So the DA urged the jury to use it, as the Attorney General concedes. So there's no Napui case I have been able to find where a Napui error was upheld and found harmless, where there was no corroboration, where in like, Napui and Giglio themselves- Well, excuse me, counsel, there was corroboration, because you have not, I mean, I can understand, I most certainly could understand and find your argument more compelling if we had just the one victim, alleged victim, and one other, and the one lied, and the other one's testimony was accepted, and then he says, well, look, you've got corroborating people, right? But you have a bunch of them. In addition to the one, which I think was Judge Forrest's point, you have a bunch of them, and they're all talking about very explicit acts of sexual gratification, not implicit, not spooning, if you will, but much, much more, and the jury heard that. Yeah, well, I would beg to differ, Your Honor, respectfully. Most of the accusers were simply fatherly type affection of hugging, back rubs, massages, and spooning. Two of the accusers had overt sexual conduct. Casey talked about an incident with oral sex, and TB belatedly came forward and said he touched his penis while sleeping, and then JK said that my client was drunk and masturbating in his bed. So they're all very different. Now, if they all get to sit in- I would disagree that those are necessarily different. Yeah, but what you're saying, Your Honor, also bolsters my point, because what you're saying is the jury used our testimony to bolster the credibility of JK and TB and Casey. That wasn't my, if you took that as what I was saying, it wasn't. I understand that, but it's a two-edged sword. You're saying there's more evidence because there's other accusations, but I'm saying there was prejudice, and what you have to say in an Apui claim is there's not any reasonable likelihood the jury used our testimony, and what the Attorney General said is there is a substantial likelihood that the jury used our testimony. Can we shift to the jury issue, or the juror debrief issue? Yes. I think you're relying on Maddox and Remmer for clearly established federal law. Neither of those cases addressed debriefing an excused juror, so how are those cases clearly established law under the AEDPA standard? Because what Andrew said last week is you don't need the facts when the principle and the holding are well-established, and that's actually just a repeat of what the Supreme Court said in Marshall v. Rogers. The theory that seems to be underlying those cases when you're talking about a juror that's still active in the case is infecting the juror deliberation process and sort of the fair jury, the impartial jury decision. If you're talking to a juror who has been excused from the trial process and there's no allegation that that juror has somehow kept on communicating with the jurors who are still active in the case, then that underlying theory really isn't at play, is it? Well, it is because this is argument. Closing argument is important. Statements from a prosecutor matter a great deal, as this court has said in Kajoyan. So the juror helped this prosecutor with his closing argument. I would agree with you if they talked about the weather, if he asked for directions, if he asked to talk to her later after the trial was over, I might agree with you. And if the DA had said it didn't matter somehow, maybe so. But the TA, when he was asked, he said absolutely it was important, it was helpful. I don't see how you can find a rebutting of a presumption of prejudice where the DA concedes it was helpful. So I think the state's court's finding is clearly unreasonable in that case. Well, just to circle back, the state court found that the basis for the DA's closing argument was more about the other juror note and not this conversation. And under AEDPA, we have to look at the state court's determination, not just for clear error, but unreasonableness. Why isn't that enough deference to say that the state's weighing is not unreasonable? Well, there's three points at which the jury was exposed to the taint. One is the DA said absolutely it was helpful. Two, in argument he said one juror right away recognized that Leslie Kars had credibility problems. Well, that matches exactly with what the juror told the DA in their conversation, according to the investigator who interviewed him. I mean, it also matches with the fact that a juror during the proceedings issued a jury question on that witness. There was a jury note that was similar, but not the same. But it's improper for a DA to refer to a juror note in argument, and I cited those cases. So I don't see how the state can take advantage of the DA was being unethical, but it was a different type of unethical thing. So there's no prejudice. And the third thing was the state court said quite clearly in addressing the not heterosexual argument that during trial, the prosecutor repeatedly referred to the lack of adult relationships. But during argument, he began to say he kept lying about his heterosexuality. Well, that was after the juror spoke with the prosecutor. But that was raised by trial counsel in his closing argument. No. I read the record. I read it. I read it, too. What trial counsel said is that if there's a man and a wife sleeping in the same bed and the man masturbates, that's okay. It's also okay if it's a father who's a single father or a non-father. He never used the word heterosexual. Heterosexual is a very technical word, and I would submit you don't say heterosexual in the normal course of business unless you're implying something about homosexuality. It's just yin and yang. They're joined together. And the clear point of repeated, this was repeated at least six times, that he was lying about being heterosexual when the DA, the Attorney General admits he never lied about being heterosexual. And he never used the word heterosexual. There's no evidence on that point in the record. The clear inference is that he can't be trusted, that he kept linking it to trustworthiness. Heterosexuals are trustworthy. Homosexuals, bisexuals are not trustworthy. And that's exactly what we've been living with in this country with the Boy Scouts and teacher bans on gays for most of this country's past. And it's very clear that this was a biased dog whistle to the jury to say he's not like us. He's not a straight, white male who has a wife. And therefore, he's attractive to boys. And that's wrong. It's wrong. It's wrong. It's wrong. And so that's another basis for reversal. You want to save any time for rebuttal? Yes, I would. All right. All right. Thank you, Your Honors. Let me, can I ask a real question before you get going here? Can I just say, may it please the court, Michelle Sonson on behalf of the warden. You're absolutely right. This was a messy trial. Things that were done by the prosecutor in this case should never have been done. Even, I'd like you to address at some point during your argument, his final point is that Well, the state court found that there was either no errors or the errors that did occur were insignificant and not prejudicial. And if you look at them cumulatively, they also did not concern like a certain one particular witness or a particular defense theory. They didn't amplify each other in terms of presenting cumulative prejudice. And that finding by the state court is also subject to a pedeference in this court. And it just, it just was not unreasonable. Ms. Sonson, I also had a similar question about cumulative effect. The state court's decision was very cursory. I think it was two sentences on that point. Could it have gotten something wrong by only looking at the NEPU errors and not considering these other ones that counsel has been raising, you know, the contact with the juror? I know there was a, the jury, the instructional error, there's the not disclosing the gifts to one of the witnesses. Did this, did the state court not consider those in its cumulative error analysis and should it have? It did consider those. It considered them obviously individually. And then in its cumulative prejudice analysis, it found that it had only found one prejudicial error, which was the NEPU error with respect to the non-overtly sexual counts. It found those prejudicial, but found those not prejudicial with respect to the remaining counts. Here's my concern is cumulative error analysis is not, let me aggregate prejudicial errors. It's let me aggregate errors. And even if they're not individually prejudicial, in total, do they call into question the fairness of the trial? And with just how terse this passage is from the state court decision, I'm wondering if the, if the, if you believe that the court undertook that proper analysis. I believe it did. It did, it also mentioned that it had found no other significant errors warranting prejudice. I understand your concern about doing a separate analysis about prejudice and being more thorough, but the United States Supreme Court has also said that we can't subject state courts to, you know, rules about having a very thorough, very long opinion addressing things. So it understood the claim presented, it understood the law that was governed it, and it had individually, you know, reviewed these claims, considered them in the cumulative, and said that it didn't result in cumulative prejudice, and that's, that's all that it, it needed to do to have a unified prejudice towards that determination. I mean, to judge Ezra's point, there were many mistakes at this trial, including ones that resulted in the reversal of nine of the counts for conviction. And then you have this, you know, approaching an excused juror and other things. I'm wondering, do you think that the, I was wrestling with this question, do you think that the contact of the excused juror should go into this cumulative error analysis if the jury was none the wiser for this contact? I mean, I realize it's prosecutorial misconduct to have done it, but whether it affected the jury's deliberations, could it have, or I'm assuming the jury didn't know that this took place. About the contact with the excused juror?  No, they didn't know at all. And she had no contact with the other jurors after she was excused. And that actually, there was not a finding of prosecutorial misconduct, there was actually a finding that he violated a state ethical rule. And that it did not result, it did not result in, you know, a biased jury because this excused jury didn't talk to the other jurors, and that the prosecutor did not change his closing argument after talking to that juror. So, and just getting back to the, really quickly, the cumulative prejudice argument, the state court's individual rulings on these claims is entitled to deference. So when the state court found that there was no prejudice on these claims, this court has to defer to that, and that has to be part of the cumulative prejudice analysis by this court, which is also itself individually subject to that ed ped deference. If I could just quickly go to Appellant's arguments on the NAPU claim. Our position is that state court was absolutely right. The standard for determining whether NAPU error is material is whether that false testimony was unimportant in comparison to everything else the jury considered on a charge. In this case, we had three witnesses who testified to overtly sexual acts by Weissman, where his sexual intent could not be disputed. Their testimony alone and in conjunction with each other was more than enough evidence as to his specific intent. As to Appellant's general arguments regarding the credibility of these witnesses, they not only were individually credible, I'll start with J.K. He immediately ran home and disclosed the masturbation incident to his mother, and they went immediately to the police. His testimony at trial about the masturbation incident was completely consistent with his disclosure, and Appellant himself told his friend that he had performed that act in bed with the child. So he was completely credible in his own right. As to T.B., we admit that there was significant impeachment evidence against him in terms of he denied at first having been molested by the appellant. He had significant mental health issues. But the trial court made a credibility finding after watching him testify that he, despite all that, he honestly and openly admitted all of those issues, and he was a very credible witness despite that. And that credibility finding by the trial court is entitled to a presumption of correctness under 2254E1, and that presumption has not been rebutted by Appellant. And lastly, K.C., I take issue with Appellant's characterization of him having said he did not remember being molested by Appellant. He did not say that. He said he did not disclose it when he was an 8-year-old boy because Appellant scared him by telling him, don't you ever tell anyone you're a bad boy. And he felt ashamed by that, and he was scared of being punished. But when he was 18 years old, he finally found the courage to disclose that, and he did, to friends and family. He also came forward to the police when he saw that Mr. Weissman had been arrested. The impeachment evidence that Appellant claims was strong was not strong, it was weak, and it was even his expert on LSD even admitted that somebody wouldn't necessarily make up something that had never occurred if they were on LSD, and even if they had, once the person's not on LSD, they know that that wasn't a true thing. His expert also corroborated Casey's testimony that he wasn't hallucinating when he was taking LSD. It just made him feel very loose, and his expert said that that can happen with low doses. Somebody doesn't necessarily always hallucinate when on LSD. So that was weak, and also- Could I ask you to turn to the sexual orientation closing argument point? Yes. What is your view of this? The state court found that the factual premise underlying this argument was completely wrong. The prosecutor did not argue anywhere that Mr. Weissman was gay, because there was no evidence that he was gay. The prosecutor certainly did not argue that because he was gay, he was therefore a child molester. That was not argued. What the prosecutor was arguing was about Mr. Weissman's statements to several of his child victims, and several of their mothers, and even the police, where he tried to convince people that he had been in romantic relationships with women. And the prosecutor was discussing that in terms of one of Mr. Weissman's learning techniques, and that was to draw these children and their mothers in, to reassure them that he was interested in adults. He wasn't interested in children. He wanted to obscure his true intent towards their children. And Mr. Weissman himself is the one who chose to put himself out there as a heterosexual. There's no evidence that he was interested in any adults. And I also take issue with the appellant characterizing the prosecutor's argument as changing after he talked to the excused juror, and that not mentioning that he had never had — that Mr. Weissman had no adult relationships, that's not true. The prosecutor did say that several times in his closing argument. He emphasized that there was no evidence that Mr. Weissman had ever had a romantic relationship with any women or men. The prosecutor's point was he was only interested sexually in children. So that would be my response to that claim. And the state court's opinion is, you know, reasonable based on the record that was before it. It went through these — the closing argument, and it pointed out that the prosecutor was just arguing about Weissman's intent with respect to making — holding himself out as a heterosexual male. As far as appellants' claim that the prosecutor said that only heterosexuals can be considered trustworthy, the prosecutor did not say that. What he was saying was he was repeating Mr. Weissman's statements, and that Mr. Weissman himself was using — was saying that he was heterosexual to victims and their mothers because he himself thought that would make him appear more trustworthy around their children. So the prosecutor was not himself making any kind of statement about that. I would just like to end by saying that there — the evidence in this case was significant. There were multiple, several witnesses who all testified to similar acts by Mr. Weissman. His behavior towards young boys spanned many, many, many years. Most of these victims did not even know each other, but they told very chillingly similar stories about the way Mr. Weissman befriended them, drew them in, and then took advantage of them by isolating them and making them very vulnerable, sometimes by giving them sleeping pills so that they would not wake up when he was molesting them. I would ask this Court to affirm the district court's finding that the state court's determination on all of these issues was reasonable, and that appellant has not sustained his burden of showing that he's entitled to relief on his federal habeas claims. Unless there are any further questions, I'm prepared to submit the matter. Thank you, counsel. Pro Bono? Yes, please. Thank you, Your Honor. I do think that, as you have stated, there's a lot of problems in this case, and cumulatively or individually, they do establish prejudice. Mr. Weissman did not say, trust me. He did not say, I'm a heterosexual. Those are made-up words, as the Attorney General agrees. He did make a couple of lies about being in relationships specifically with his housekeeper and being past married. He did, according to friends, have a serious girlfriend in college. Your Honor asked about whether the DA's comments were in response to the defense attorney's  Most of the DA's comments about Mr. Weissman lying about being a heterosexual, which he never did, were made in the opening part of the DA's argument. There was one comment that was about the committed heterosexual relationship, which was made in rebuttal. But most of them were made in the opening part of the DA's argument. And the state court did not address that latter comment, that he's different because he's not in a committed heterosexual relationship and you can't trust him. So, part of that is an unreasonable finding of fact under E-2, which would take it out of the AEDPA deference. As far as the jury issue, the DA said it absolutely was useful to him. It made him more confident. I don't see how you can rebut the presumption of prejudice where the DA says it helped him. I do feel the Attorney General is correct, and I said this in my brief, that there was partial corroboration of the JK count, because he did admit masturbating in the bed. But there was no corroboration of the TB count. He had falsely accused his mother. The state court said he had been substantially impeached. That finding should be deferred to. The trial court did make a finding with respect to his credibility on the Brady issue, but not with respect to the allegations of molestation. All right, counsel, you've exceeded your time. Thank you so much for your patience and your questions and argument. Thank you. Thank you. I thank counsel for their arguments in this matter. Weissman v. Clark is submitted. I realize that at the outset I missed one of our submitted on the briefs case, and that's Cross v. RLI Insurance Company. And with that, we are in recess for the day. All rise.
judges: FORREST, SANCHEZ, Ezra